UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                              Case No. 09-75993-wsd

    CAROL JEAN WARFIELD,                     Chapter 7

        Debtor.                                   Hon. Walter Shapero

_____/

### OPINION DETERMINING THAT BANKRUPTCY PETITION PREPARER ENGAGED IN UNAUTHORIZED PRACTICE OF LAW AND VIOLATED 11 U.S.C. § 110

    This matter came before the Court upon its Order to Show Cause Why Compensation of Non-Attorney Bankruptcy Petition Preparer Should Not Be Limited to $90.00 With Remainder of Fee to Be Turned Over to Chapter 7 Trustee Pursuant to 11 U.S.C. § 110(h)(3)(A) ("Show Cause Order"). (Docket No. 15). A hearing was held, at which the Court heard testimony from the Debtor, Carol Jean Warfield, and the two non-attorney bankruptcy petition preparers, Derrick Hills and April Tubbs-Streeter.[1] In light of the substance of the evidence, and the practice of law issues raised thereby, the Court took the matter under advisement with this opinion to follow.

### I. Factual Background

    In recent years, there has been an increase of bankruptcy filings in this district with materials prepared by non-attorney bankruptcy petition preparers. One such preparer is Derrick Hills. Derrick Hills has had a rather tumultuous history providing such services, culminating in his being enjoined throughout this district and otherwise "from providing any bankruptcy related services to any individuals." (Case No. 07-4210, Docket No. 91). Despite this injunction, and in direct violation of it, Derrick Hills has continued to involve himself, directly or indirectly, with the filing of bankruptcy

---

[1] The Show Cause Order also required the appearance of Crane & Shore, Inc., a Michigan for profit corporation of which Derrick Hills was an, or the, incorporator and is president, secretary, treasurer, director, and primary shareholder. That corporation failed to appear through counsel, as required.

1

petitions.  Apparently, he does so under the belief that a corporation, Crane & Shore, Inc. permits him to do through it what he is enjoined from doing in his individual capacity.[2] In addition to involving his corporation in his bankruptcy preparing activities, Hills has also involved and/or knowingly tolerated the involvement of a number of other individuals, whom he refers to as his, or Crane & Shore's, "associates."  The preparer involved in this case, Aprill Tubbs-Streeter, is such an "associate."

The Debtor in this case, Carol Jean Warfield, credibly testified as to the circumstances surrounding her bankruptcy filing.  During 2009, Warfield was experiencing financial difficulties and thought filing bankruptcy might be useful.  A friend of Warfield's gave her a phone number which he had seen in a bankruptcy advertisement in an office window of a building located at 28473 Warren Rd., Westland, Michigan.  Warfield called the number and set up an appointment for November 18, 2009.  Warfield arrived at the office on the date and time set for her appointment, and, after waiting for a short period, a man arrived who introduced himself as Derrick Hills. Hills invited Warfield to join him in a back room of the office which contained a table and some chairs.  Hills then set about obtaining Warfield's credit report from the internet. A short time later, a woman arrived at the office, whom Hills introduced as his "associate", Aprill Tubbs-Streeter.  Hills and Tubbs-Streeter then sat down at the table and Hills assisted Tubbs-Streeter in completing Warfield's bankruptcy petition and schedules.

Warfield testified that there was no discussion as to which chapter of bankruptcy would be filed; Hills simply decided it would be a chapter 7 filing and instructed Tubbs-Streeter to check the appropriate box.  Indeed, Warfield testified that she did not know the differences between chapter 7 and chapter 13 and was unfamiliar with the forms being completed on her behalf.

Warfield's bankruptcy petition and schedules were admitted into evidence. Warfield testified that although she was asked some questions, the schedules were completed primarily as a result of Hills telling Tubbs-Streeter what to enter and working off of the credit report Hills had himself obtained.  When shown a copy of her Schedule

---

[2] Crane & Shore, Inc. has now itself similarly been enjoined from having any involvement in any bankruptcy matter.  (Case No. 09-68447, Docket No. 32).

A, Warfield testified that she did not know the meaning of "fee simple" (which is what her interest in certain real property was listed as) and did not instruct Hills or Tubbs-Streeter to list her interest as such. When asked about Schedule C, Warfield testified that she does not know what an exemption is. She testified that Schedule C was completed by Hills giving her a sheet of paper containing information on exemption planning and then asking her individually as to each asset which exemption she wished to claim. Also included in the papers provided Warfield, was a completed petition to waive filing fee. Warfield testified that she did not request such a form and that Hills had provided it unsolicited.

After three or four hours, Warfield's petition and schedules were completed. Warfield paid $375 in cash for the services, receiving a receipt from "Crane & Shore".[3] Warfield then left the office with her bankruptcy petition and schedules, a disclosure from Crane & Shore, Inc., and a list of instructions as to how to file her case.

Warfield returned the following day to amend her schedules to add two credit card debts previously omitted. Apparently, Warfield had been given the impression that if the credit cards were omitted, they would not be within the bankruptcy and she could "keep them." The source of this belief is not clear. Nonetheless, Warfield decided to add the credit cards to her scheduled debts and Hills assisted. Later that day, after leaving the office, Warfield became nervous about the bankruptcy process. She called Hills and expressed her anxiety with the prospect of having to do the bankruptcy by herself. Hills reassured her and represented that it would only involve filing the paperwork and attending the 341 meeting. After she filed her petition, Warfield had further questions about the process and contacted Hills. Warfield testified that this caused Hills to become annoyed and admonish her that she hadn't "read her instructions" regarding the 341 meeting and continuing bankruptcy process.

Warfield testified that subsequent to November 19, 2009, she did not see Hills again until December 17, 2009. On the morning of December 17, 2009, a day Warfield was to appear before this Court for a hearing on her application to waive the filing fee, and, a general inquiry by the Court as to the involvement of the petition preparers in the

---

[3] The receipt, admitted into evidence as Exhibit B, actually recited two contradictory figures: $375 and $400. Based on the testimony, it seems clear that $375 was the amount actually charged.

case, Hills appeared at Warfield's home unannounced. Warfield testified that Hills produced a paper that he told her she needed to sign, that paper being a disclaimer, backdated to November 18, 2009, stating that Crane & Shore, Inc. cannot, and indeed did not in this case, provide legal advice. This paper was nearly identical to one Warfield had signed on November 18, 2009. She produced both papers for the Court and they were admitted into evidence. Warfield testified further that during his visit to her home on December 17, Hills instructed her to tell the Court that his involvement on November 18 and 19, 2009 was limited to that of an observer, should the question arise at the hearing that afternoon.

Following the testimony of Warfield, Hills and Tubbs-Streeter each took the witness stand. Hills testified, in the form of a statement, that the testimony of Warfield was inaccurate. Hills requested the Court take into account Warfield's "nervous condition, age, paranoia, as well as the length of time that has passed" and thus discount her testimony, speculating that while her testimony may be sincere, it was factually inaccurate. With regard to the substance of Warfield's testimony, Hills contended that he appeared during the completion of the schedules only as an observer, that he did not obtain the credit report, and that he never visited Warfield's home. Following his statement, the United States Trustee attempted to question Hills, but he refused to answer, invoking something akin to a Fifth Amendment privilege.

Tubbs-Streeter testified that she completed all of Warfield's paperwork on her own, and that she, Tubbs-Streeter, obtained the credit report. Tubbs-Streeter further testified that both disclosures admitted into evidence were in fact completed on November 18. When asked why two nearly identical disclosures were filled out on the same day, Tubbs-Streeter said that Warfield initially filled out the wrong one but she let her keep it.

The Court found Warfield's testimony to be credible and consistent with the documentary evidence. Her answers were logical and she had no discernible motivation to be anything other than completely candid and truthful. Based on its observations and the totality of the evidence, the Court simply disbelieves the testimony of Hills and Tubbs-Streeter.

## II. Analysis

The primary purpose of the hearing was to determine whether the fee charged was reasonable, i.e., whether under 11 U.S.C. § 110(h)(3)(A) the fee charged was in excess of the value of the preparers' services. However, neither Tubbs-Streeter nor Hills submitted any material or direct evidence or argument on that subject other than possibly the amount of time they spent in connection with their preparer activities and what they said they actually did. What the hearing made clear was that whatever else Hills and Tubbs-Streeter were doing, they were also knowingly engaging in the unauthorized practice of law and attempting to conceal it – a subject which thus necessarily became involved in, and not separable from, these proceedings, which are an inquiry as well into compliance or non-compliance with § 110.

*a. Section 110 and the unauthorized practice of law*

Section 110 was added to the Bankruptcy Code as part of Bankruptcy Reform Act of 1994. Its purpose is to address abuses perpetrated upon consumer debtors by non-attorney bankruptcy petition preparers. *In re Jolly*, 313 B.R. 295, 300 (Bankr. S.D. Iowa 2004) (citing *Consumer Seven Corp. v. United States Trustee (In re Fraga)*, 210 B.R. 812, 816-17 (B.A.P. 9th Cir. 1997)). The rationale was explained:

> This section adds a new section to chapter 1 of title 11 United States Code to create standards and penalties pertaining to bankruptcy petition preparers. Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R. Rep. 103-834, 103rd Cong., 2nd Sess. at 40-42 (Oct. 4, 1994). While § 110 itself refers to "bankruptcy petition preparers," it clearly does not permit such individuals to engage in activities additional to those they were able to perform prior to the section's

enactment. Section 110(k) expressly provides that the section shall not be construed as permitting activities otherwise prohibited by law, including laws regulating the unauthorized practice of law. As one court explained:

> So what does § 110 tacitly permit? The answer in a nutshell is "not much." Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting "petition preparers" to rendering only "scrivening/typing" services. Anything else -- be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.

*In re Guttierez*, 248 B.R. 287, 297-298 (Bankr. W.D. Tex. 2000). *See also*, *In re Gomez*, 259 B.R. 379, 385 (Bankr. D. Colo. 2001) ("Congress' clear intent was that § 110 authorize bankruptcy petition preparers to provide only scrivener services, limited to clerical services such as copying and typing.").

Section 110 was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. As part of the amendments, § 110(e)(2) was added, which provides:

> (2)(A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).
>   (B) The legal advice referred to in subparagraph (A) includes advising the debtor--
>     (i) whether--
>       (I) to file a petition under this title; or
>       (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
>     (ii) whether the debtor's debts will be discharged in a case under this title;
>     (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;
>     (iv) concerning--
>       (I) the tax consequences of a case brought under this title; or

6

>    (II) the dischargeability of tax claims;
>
>    (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
>
>    (vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or
>
>    (vii) concerning bankruptcy procedures and rights.

11 U.S.C. § 110(e)(2). The examples of "legal advice" proscribed under paragraph (e) themselves constituting practice of law, the addition of this paragraph did not so much proscribe additional activities as it illustrated clearly for non-attorney bankruptcy petition preparers some of the activities in which they can not lawfully engage.

In the instant case, the credible testimony of Warfield establishes the occurrence of several acts proscribed by § 110(e)(2), including: (1) deciding under which chapter Warfield's case would be filed; (2) determining how to characterize the nature of Warfield's interest in real property; and (3) advising Warfield concerning bankruptcy procedures and rights. Warfield testified that there was no discussion as to which chapter of bankruptcy was to be filed, Hills simply decided it would be a chapter 7 filing and instructed Tubbs-Streeter to check the appropriate box. Indeed, Warfield testified that she didn't know the differences between chapter 7 and chapter 13. The nature Warfield's interest in real property listed on Schedule A was listed as "fee simple." Warfield testified that she did not know the meaning of "fee simple" and that the thought to list it as such must have necessarily originated with Hills or Tubbs-Streeter. When the latter two individuals were questioned regarding the source of the term, they declined to answer on the ground they may incriminate themselves. The Court has no doubt that Hills and/or Tubbs-Streeter made the determination as to how Warfield's interest in the real property would be characterized. Finally, Warfield's testimony indicated that Hills provided printed instructions as to how to proceed with the bankruptcy case after the completion of the petition and schedules. While the Court does not know the exact scope and extent of these instructions provided by Hills as they were not introduced into evidence, it is nearly impossible to imagine any instructions regarding bankruptcy that would not concern bankruptcy procedures and rights and therefore violate § 110(e)(2). Moreover, aside from the written instructions, Hills clearly provided information regarding bankruptcy

procedures and rights in the telephone conversations Warfield testified occurred after the completion of her petition and schedules.

While the above activities by Hills and Tubbs-Streeter are expressly prohibited by § 110, they also constitute the unauthorized practice of law. Unauthorized practice of law is prohibited by Michigan law. *See* M.C.L. § 600.916. Michigan does not define precisely what constitutes the practice of law and that task has been largely left to the judiciary. *In re Bright*, 171 B.R. 799, 801 (Bankr. E.D. Mich. 1994). In *Bright*, a pre 11 U.S.C. § 110 case involving an individual preparing bankruptcy petitions and papers for a fee, this Court looked to Michigan case law examining the unauthorized practice of law in settings outside of bankruptcy, as well as case law from other courts around the country dealing with the issue within bankruptcy settings. The Court determined that several of the paralegal's actions in that case constituted the practice of law, including, inter alia, showing the debtor materials regarding exemptions so that the debtor could decide which exemptions to claim. Much of what this Court said in that case is applicable in this case.

Warfield testified that she does not know what an exemption is and that Schedule C was completed by Hills giving her a sheet of paper containing information on exemption planning and then questioning her individually as to each asset which exemption she wished to claim. While the Court is not privy to the exact contents of such paper as it was not introduced into evidence, it is clear that such practice on the part of Hills and Tubbs-Streeter constitutes the practice of law.

The fact that Hills and Tubbs-Streeter caused Warfield to sign a disclosure stating that they were unable to, and indeed had not, provided legal advice, is immaterial in insulating them from the consequences of their actions. *See In re Bright*, 171 B.R. at 803 ("A disclaimer that the non-lawyer is only providing 'scrivener' or 'paralegal' services is irrelevant if the non-lawyer in fact engages in unauthorized practice of law."). It is material however that Hills had Warfield sign a second such disclosure which was backdated for the apparent purpose of deceiving this Court.[4] This, along with the attempts by Hills to get Warfield to give false testimony as to his involvement in the

---

[4] Interestingly, at the hearing the day this occurred, the debtors in almost every case Hills was associated with had similar disclosures with them in Court and Hills encouraged each debtor to show such to the Court.

bankruptcy process may well rise to a level so as to warrant criminal prosecution. The Court will refer the matter to the United States Attorney.

For the reasons set forth above, the Court concludes that Hills and Tubbs-Streeter's conduct violated § 110(k) as it constituted the unauthorized practice of law and it violated three of the specific prohibitions of § 110(e).

*b. Remedies*

**1. Fines**

Section 110 provides several different remedies for bankruptcy petition preparers who violate its proscriptions. Additionally, the Court has the inherent power to sanction individuals engaged in the unauthorized practice of law. Section 110(i)(1) provides:

> (1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor--
>     (A) the debtor's actual damages;
>     (B) the greater of--
>       (i) $ 2,000; or
>       (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
>     (C) reasonable attorneys' fees and costs in moving for damages under this subsection.

The unauthorized practice of law constitutes a fraudulent, unfair, or deceptive act. *In re Tomlinson*, 343 B.R. 400, 407 (E.D.N.Y. 2006); *Scott v. United States Tr. (In re Doser)*, 292 B.R. 652, 659 (D. Idaho 2003); *In re Dunkle*, 272 B.R. 450, 456 (Bankr. W.D. Pa. 2002); *In re Moffett*, 263 B.R. 805, 813 (Bankr. W.D. Ky. 2001). In addition to their unauthorized practice of law, Hills, Tubbs-Streeter and Crane & Shore's conduct also falls within § 110(i)(1) because it violates the explicit prohibitions of § 110(e)(2).

At the hearing, there was no evidence that Debtor sustained actual damages. Pursuant to § 110(i)(1), the Court will thus award Warfield $2,000; and Hills, Tubbs-Streeter and Crane & Shore, Inc. will be jointly and severally liable for payment of such.

The United States Trustee will be awarded its reasonable attorney fees upon the submission of an affidavit regarding same.

### 2. Fair Value of Preparers' Services

Section 110(h) provides, in pertinent part:

> (2) A declaration under penalty of perjury by the bankruptcy petition preparer shall be filed together with the petition, disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor. […]
> (3) (A) The court shall disallow and order the immediate turnover to the bankruptcy trustee any fee referred to in paragraph (2) found to be in excess of the value of any services--
>  (i) rendered by the bankruptcy petition preparer during the 12-month period immediately preceding the date of the filing of the petition; […]
>  (B) All fees charged by a bankruptcy petition preparer may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this subsection or subsection (b), (c), (d), (e), (f), or (g).
>  (C) An individual may exempt any funds recovered under this paragraph under section 522(b).
> (4) The debtor, the trustee, a creditor, the United States trustee (or the bankruptcy administrator, if any) or the court, on the initiative of the court, may file a motion for an order under paragraph (2).

Warfield paid Tubbs-Streeter, Hills, and Crane & Shore, Inc. $375 for the services rendered in this case. Generally with applications for compensation under the Bankruptcy Code, upon objection, the applicant has the burden of proof as to the reasonableness of the fees sought. If the Supreme Court or the Judicial Conference had acted under the statute to provide rules or guidelines setting maximum amounts of preparers' fees (which they have not), that would not mean that fees in an amount less than the permitted maximums would not be subject to scrutiny as to their reasonableness. The clear and overriding statutory mandate that the Court disallow and require turnover of any fee found to be in excess of the value of any services rendered by the preparer would indicate such to be the case. The Court therefore believes it is the preparer's burden to show that the consideration received is not in excess of the value of the services

provided, notwithstanding that the inquiry may have been initiated, as permitted, by the Court or persons other than the preparer.[5]

Given that the only services which can lawfully be rendered by a bankruptcy petition preparer under § 110 are essentially transcription or typing, the Court would find any fee beyond $80 to be in excess of the reasonable value of services rendered and thus excessive and unwarranted. Such figure is arrived at by multiplying the approximately four hours spent by $20, a reasonable hourly rate for typing services.[6] Of course, here, the petition and schedules were not typed, but handwritten. This fact is further illustration of exactly what was being offered by Hills and Tubbs-Streeter: legal services. It was not the physical act of filling out the various forms that Warfield was purchasing, she could have done that herself.[7] Rather, it was the know-how to complete the schedules that she needed, and Hills and Tubbs-Streeter provided – and in doing so, crossed the line between legally typing a bankruptcy petition according to the affirmative dictates of a client, and violating the statute and/or illegally engaging in the practice of law.

Pursuant to § 110(h)(3)(B), Hills, Tubbs-Streeter and Crane & Shore must disgorge the $375 collected from Warfield to the chapter 7 trustee because their conduct violated § 110(e).

---

[5] In this particular case, irrespective of who has the burden of proof, the entire record supports the indicated conclusion.

[6] The Court taking judicial notice of the fact that the Bureau of Labor Statistics' May 2009 National Occupational Employment and Wage Estimates reports that Legal Secretaries (43-6012) earn a median wage of $19.16 per hour and that Secretaries, Except Legal, Medical, and Executive (43-6014) earn a median wage of $13.96 per hour. http://www.bls.gov/oes/2008/may/oes_nat.htm#b00-0000 (last visited February 10, 2010). Since a Bankruptcy Petition Preparer is not a profession included in the report the Court looked to fields that include similar functions, i.e., typing. Of course, secretaries perform a broader range of services than a Bankruptcy Petition Preparer, and, are probably able to command a higher wage in an efficient market where a preparer limits him or herself to the services he or she is able to lawfully provide, i.e. typing/scrivening. Taking into account some expense for overhead, the Court believes $20 per hour would be a reasonable rate for a preparer (who has not violated § 110) to charge.

[7] Indeed, an individual can obtain all of the blank forms necessary for the filing of a bankruptcy free of charge on the Court's website: http://www.mieb.uscourts.gov/ (last visited March 2, 2010). Moreover, a guide for pro se debtors is also available free of charge on the website, and possibly elsewhere.

## III. Conclusion

For the reasons set forth above, the Court finds that Hills, Tubbs-Streeter and Crane & Shore, Inc. engaged in the unauthorized practice of law and otherwise violated § 110. Accordingly, (a) Hills, Tubbs-Streeter and Crane & Shore, Inc. are jointly and severally liable to Warfield in the amount of $2,000 pursuant to § 110(i)(1); (b) the Court will award the United States Trustee its reasonable attorneys fees and it shall submit an affidavit regarding same; and (c) Hills, Tubbs-Streeter and Crane & Shore, Inc. shall between them disgorge the $375 collected, and pay the same to the chapter 7 trustee pursuant to § 110(h)(3)(B). Said amounts shall be paid no later than April 30, 2010 and each of the said obligors shall file an affidavit attesting to same within three (3) days of the actual payment date.

An appropriate order is being entered contemporaneously herewith.

.

**Signed on March 05, 2010**

                                             **____ __/s/ Walter Shapero_ ___**
                                             **Walter Shapero**
                                             **United States Bankruptcy Judge**